**CALLAHAM et al. v. THURMOND.**

No. 6333—Opinion Filed April 30, 1918.

(172 Pac. 798.)

**Bills and Notes—Defense—Striking Answer.**

In an action upon a promissory note, where the answer of the defendant pleaded usury charge, no consideration, the existence of agency between the present payee and the cashier of the former payee, and knowledge on the part of the present payee as to usury being embraced therein, the same stated good defenses, if true, to said note, and it was error to sustain a motion to strike out that part of said pleadings which pleaded the same.

(Syllabus by Hooker, C.)

Error from County Court, Roger Mills County; W. H. Mouser, Judge.

Action by I. C. Thurmond against Frank W. Callaham and another. Motion to strike certain paragraphs of the answer sustained, and defendants bring error. Reversed, and cause remanded for new trial.

H. P. Bailey, for plaintiffs in error.

E. L. Mitchell and Perry Madden, for defendant in error.

Opinion by HOOKER, C. The defendant in error on the 10th day of July, 1913, commenced his action in the county court of Roger Mills county against the plaintiffs in error to recover a judgment upon a promissory note alleged to have been executed and delivered by them to him on the 19th day of February, 1912, whereby they promised on December 1, 1912, to pay to him, the said I. C. Thurmond, the sum of $560.63, with interest at the rate of 10 per cent. per annum after maturity, and the further sum of $60 as attorney fees in the event said note was placed in the hands of an attorney for collection, and the said defendant in error further sought a foreclosure of a chattel mortgage given by them to secure the payment of the aforesaid note and for a sale of the property and an application of the proceeds to the satisfaction of his debt.

The plaintiffs in error filed an answer in said cause which was as follows to wit:

"(1) Defendants deny each and every material allegation in plaintiff's petition except such as are hereinafter admitted or specifically denied.

"(2) Defendants admit they signed the note and mortgage sued on but did so under the following conditions:

"(3) Defendants allege that on the 30th day of November, 1908, defendant Frank W. Callaham, together with W. H. Callaham made and executed to the Cheyenne State Bank their promissory note for $272 due and payable on the 1st day of December

1909, and at the same time executed a chattel mortgage to secure the payment of said note; that said note and mortgage were given in consideration of $200 and no more borrowed of said bank by Frank W. Callaham and W. H. Callaham: that there was at that time 36 per cent. on the $200 estimated thereon for the time said note had to run; to wit, one year, and was added to and made a part of the principal therein, being 26 per cent. mo,re than the highest legal rate of interest allowed by law in the state of Oklahoma; that to secure the payment of said $272 said F. W. and W. H. Callaham executed a mortgage on said personal property.

\* \* \*

"(4) Defendants further aver that on the 6th day of January, 1910, there was rightfully due and owing to the Cheyenne State Bank the sum of money borowed as aforesaid $200 and $22 interest, making $222; that F. W. and W. H. Callaham asked and requested by said bank in order to get an extension of time to pay their indebtedness to make and sign a note and mortgage of $471.22, being $249.22 more than 10 per cent. on the sum borrowed, $200 for the time from November 30, 1908, to the date of making said note and mortgage; that no additional sum of money was gotten by said F. W. Callaham and W. H. Callaham; that the $249.22 was usury charged by said Cheyenne State Bank against said Callahams. Copies of said note and mortgage are herewith filed as part hereof. \* \* \*

"(5) Defendants allege that upon the 24th day of March, 1911, defendant F. W. Callaham paid the Cheyenne State Bank $100 to be applied in payment of the indebtedness aforesaid of F. W. and W. H. Callaham and that there appears on the back of said $471.22 note a credit of $95.64 entered upon said note on the 12th day of April, 1911, which lacked $4.36 covering the amount paid; that again on the 15th day of April, 1911, defendant, F. W. Callaham paid said bank $200, $107.36 of which should have been applied in payment of the indebtedness of said Callahams aforesaid, but the same does not appear to have been applied or accounted for by said bank to the credit of said Callaham; that F. W. and W. H. Callaham executed a mortgage to secure the payment of said note, what they legally owed and usury as well on the same property embraced in the first mortgage above mentioned and other property, as shown by copy of said mortgage filed herewith as a part hereof, etc.

"(6) Defendants aver that on the 4th day of May, 1911, defendant F. W. Callaham and W. H. Callaham owned the Cheyenne State Bank $40.22, being the amount of the $200 originally borrowed by defendant F. W. Callaham and W. H. Callaham with 10 per cent. interest thereon, subject to the payments made as aforesaid. Defendants further show that upon the said day, May 4, 1911, said F. W. and W. H. Callaham were asked and required by S. Jackson, cashier of the Cheyenne State Bank, to again execute a new note and mortgage to secure the balance of their indebtedness to said bank of the orginal loan of $200, which at that time rightfully and legally amounted to $40, and no more. The defendant F. W. Calaham and W. H. Callaham being limited in education unable to compute interest by partial payments and reposing implicit confidence in Mr. S. Jackson to deal fairly and honestly with them they did on said 4th day of May, 1911, make and execute to one I. C. Thurmond their note and mortgage for $492.63, when in truth and fact they only owed a balance of $40.02, making said note and mortgage express an usurious indebtedness of $456.61, which they did not and do not now owe to I. C. Thurmond, whom they did not and do not now know; never had any acquaintance with I. C. Thurmond; never got any money or other property from said I. C. Thurmond. \* \* \*

"(1) Defendants aver that there appears indorsed upon the back of said $492.63 note credited as follows to wit:

| | |
|---|---|
| 10-17-11 | $10 |
| 12-4-11 | 10 |
| 12-16-11 | 20 |

—which being deducted from the balance really owing by defendants leaves $2.12 still due from these defendants; that on the day the note and mortgage sued on was executed by defendants there was due and owing from defendant F. W. and W. H. Callaham the sum of $2.15. At that time, as before, these defendants were requested and required by S. Jackson aforesaid to make and execute the note and mortgage sued on or suit would be commenced to foreclose the mortgage then securing the $492.63 note. Defendants did not willingly sign said note and mortgage, but felt that they were compelled to do so to save their property from seizure and sale; said mortgage covering all the personal property they then owned.

"(8) Defendants aver that the note and mortgage sued on is the result of one continuous transaction without any increase or change in the consideration passing to defendants since F. W. Callaham and W. H. Callaham borrowed $200 of the Cheyenne State Bank on the 30th day of November, 1908, hereinbefore set out; that defendants never at any time got any money or other property from I. C. Thurmond, and at the time F. W. Callaham and W. H. Callaham signed the $492.63 note made payable to I. C. Thurmond they did not read said note and did not know that it was made payable to said Thurmond; they, knowing it was a renewal of their former note to the Cheyenne State Bank, understood it to be payable to said bank; that the change of the payee in said note and mortgage was a mere plan and scheme upon the part of S. Jackson, the agent and representative of I. C. Thurmond, and formerly representing the Cheyenne

State Bank, to force F. W. Callaham and W. H. Callaham and these defendants to pay a sum of money which they did not morally and legally owe.

"(8) Defendants allege that the whole of the note sued on, to wit, $560.63, is usury, except $2.20, which being deducted leaves $558.43, usury charged and now sought to be collected from these defendants.

"(10) Defendants aver that after all their indebtedness which they are. or ever have been, liable to pay plaintiff has been fully satisfied, the plaintiff then is legally indebted to them in the sum of $1,116.83.

"(11) Defendants aver that it was the duty of the plaintiff, I. C. Thurmond, to know and that he did know and intentionally charged the usury contained in the notes aforesaid made payable to him the note sued on; that the notes and mortgages were based upon an illegal and usurious consideration, to wit, $558.43, aforesaid.

"(12) Defendants aver that they do not owe any part of the note sued on, for the reason that the same is based upon a consideration which is in part, at least, illegal and contrary to law, to wit, usury. * * *

"The defendants pray that the plaintiff take nothing by his suit; that the note and mortgage sued on be canceled and held for naught; and that the defendants have judgment against the plaintiff for double the amount of the usury charged, in all $950, and attorney fees," etc.

Thereafter the plaintiff filed a motion in said court to strike all of paragraphs 3, 4, 5. and a certain part of paragraph 6, and all of paragraphs 7, 8, 9, 10, 11. and 12 therefrom, which motion was by the court sustained. An exception was duly saved thereto by the defendants below. And in the motion for a new trial the action of the court in sustaining said motion to strike was assigned as one of the reasons why a new trial should be granted, and the same is so assigned in the petition in error presented to this court. This constituted error. By reference to the paragraphs in said answer it can readily be seen that the defendants below pleaded usury, charge no consideration. and also specifically alleged the allegations of agency to exist between S. Jackson and the defendant in error, I. C. Thurmond, and knowledge on the part of Thurmond as to usury being charged and embraced in said note. And the facts and circumstances were specifically set forth in said answer to establish the amount of usury charged, and also it pleaded payment of certain sums of money, all of which defenses were entirely eliminated by the action of the court in striking the paragraphs from the answer.

The evidence in this case clearly establishes that the plaintiffs in error only received the sum of $200 as the consideration for the various notes executed by them, as shown herein. This indebtedness was created on the 30th of November, 1908, and a note for the sum of $272 payable December 1, 1909, was executed. Upon said note the interest was paid up to January 1, 1910, and on January 6, 1910, the plaintiffs in error executed another note for the sum of $471.22 due July 1, 1910, drawing 10 per cent. interest after maturity, upon which there was paid interest from October 1, 1911, and in addition thereto there was paid on April 12, 1911, the sum of $95.64, and on March 24, 1911, the sum of $100 as appears from the indorsements upon said note. But all the testimony shows that the payment of March 24, 1911, was $107.36, and that on April 12, 1911, was $100. On May 4, 1911, a new note for said indebtedness was executed due December 1, 1911, payable to the defendant in error, I. C. Thurmond, for the sum of $492.63. The other notes were executed to the Cheyenne State Bank, of which S. Jackson was the cashier, and at his instance Thurmond was named as payee of this note of May 4, 1911. The plaintiffs in error did not know him, did not borrow or obtain money from him, never saw him in their life, nor he them, and that part of the answer here which was stricken out upon motion alleges that the substitution of the payee in said note, was a sham in order to cover up and shield the obligation from the usury charged. Upon this last-named note there appears three credits as follows:

October 17, 1911 _____$10
December 4, 1911 _____ 10
December 16, 1911 _____ 20

On the 19th of February, 1912, the defendants in error executed their note for $560.-63, whereby they promised to pay I. C. Thurmond, December 1, 1912, $560.63, with 10 per cent. interest after maturity as stated hereinabove. It appears that the more the plaintiffs in error paid upon these obligations the larger the same became.

If any justification was ever needed for the enactment of a usury law in the state of Oklahoma, the facts and circumstances of this case clearly demonstrate it. How the conscience of any individual could knowingly approve the usurious exaction established by this record is inconceivable. The original loan of $200, upon which there has been paid more than the principal and the lawful rate of interest, leaving an indebtedness of nearly three times the amount of the original loan, is shown by this record. While the original indebtedness was created in 1908, the subsequent renewals, by the

execution of new notes, were not payments within contemplation of law, but extended all usury charged into the new obligations. See Anderson v. Tatro, 44 Okla. 219. 144 Pac. 360; Bank of Tuttle v. Gordon, 63 Okla. 47, 161 Pac. 1081; Bank v. Sensebaugh, 58 Okla. 452, 160 Pac. 456.

This transaction having been kept alive by the execution and delivery of renewal notes after section 1005, Rev. Laws 1910, went into effect, the same is applicable here.

The testimony of the defendant in error is far from convincing that he in good faith acquired the ownership of the note in question. In fact to the casual observer the transaction seems to be a subterfuge used by the cashier of the Cheyenne State Bank to avoid the consequence of an unconscionable transaction, and if the allegations of the answer be true that Jackson in these transactions was the agent of the defendant in error, he (Thurmond) should be compelled to pay the penalty prescribed by section 1005, Rev. Laws 1910, for his unreasonable exactions. For the reasons stated we are of the opinion that that part of the answer which was eliminated upon motion of the plaintiff below stated a defense to the cause of action sued for herein by the plaintiff below, and the trial court committed error in so holding.

There are numerous assignments of error presented here, but it is only necessary, in our judgment, to consider the case as we have, for since this case was decided our court has construed the sections of the statute with reference to usury in several cases, and the other errors are not likely to occur upon a new trial of this action.

The judgment of the lower court therefore is reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.